UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIRIM NAZIFI,<br><br>       Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | No. 13 C 5728<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lirim Nazifi filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

### I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 976-77 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to per-

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB

form "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on September 24, 2010, alleging that he became disabled on September 17, 2007, because of back injury, diabetes, left leg pain and

---

and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

numbness, and side effects from medication. (R. at 13, 88, 142). The application was denied initially on November 23, 2010, and upon reconsideration on March 8, 2011. (R. at 13). Plaintiff filed a timely request for a hearing and on December 12, 2011, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (R. at 13). The ALJ also heard testimony from Caroline Ward-Kniaz, a vocational expert (VE). (R. at 13).

The ALJ denied Plaintiff's request for benefits on January 19, 2012. (R. at 23). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since September 17, 2007, the alleged onset date. (R. at 15). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, status-post fusion surgery, and chronic back pain are severe impairments. (R. at 15). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 16).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that he retained a residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that "claimant cannot climb ladders, ropes or scaffolds, and must avoid unprotected heights and dangerous moving machinery." (R. at 17). Based on Plaintiff's RFC and the VE's testimony, the ALJ de-

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

termined at step four that Plaintiff is unable to perform any past relevant work. (R. at 21). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 21). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (R. at 22). The Appeals Council denied Plaintiff's request for review on June 14, 2013. (R. at 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evi-

dence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

Plaintiff suffers from low back pain and left leg pain as a result of three work-related injuries lifting heavy slabs of concrete and a heavy generator in 2006 and

2007. (R. at 17, 933). A July 2006 MRI confirmed lumber spinal injury, showing retrolisthesis of L5 on S1, degenerative disc disease, and central disc protrusion and bulging. (R. at 280). Plaintiff continued work sporadically following his injuries and resumed light duty work following a September 17, 2007, injury. Plaintiff's employment was terminated on March 26, 2008. (R. at 814-15).

Plaintiff began treatment with Dr. Francisco Espinosa, a neurosurgeon, in April 2008, for his low back pain and left leg pain. (R. at 933). On February 19, 2009, Plaintiff underwent interbody fusion surgery at L4-L5 and L5-S1. (R. at 335, 362). The post-operative diagnosis was lumbar degenerative disc disease, herniated L4-L5 and L5-S1 discs with left leg pain and positive discograms at both levels. (R. at 18, 335). Following surgery, Plaintiff engaged in pain management treatment with Scott Glaser, M.D., a pain specialist, and received epidural steroid injections in 2010 (R. at 184, 504, 508); participated in physician and aquatic therapy (R. at 304); and took the following medications for back pain: Darvocet, Lyrica, Norco, Neurontin, and Gabapentin. (R. at 18). Throughout 2009-2010, Dr. Espinosa noted Plaintiff was in pain and opined during follow-up appointments on May 18, 2009 (R. at 282), August 3, 2009 (R. at 693), September 28, 2009 (R. at 284), November 10, 2009 (R. at 283), December 8, 2009 (R. at 522), January 12, 2010 (R. at 330), May 21, 2010 (R. at 285), July 16, 2010 (R. at 477), and November 9, 2010 (R. at 701) that Plaintiff was "incapacitated and unable to work." On March 9, 2011, Dr. Glaser noted that Plaintiff's lower back pain and lower extremity pain had increased since Plain-

tiff's office visit on September 20, 2010, as well as the frequency of his pain. (R. at 963).

On November 18, 2010, Marion Panepinto, M.D., a non-examining medical consultant, conducted a physical residual functional capacity assessment. (R. at 940-947). Dr. Panepinto noted Plaintiff indicated limitations due to pain and side effects of medication, but that he "does appear to be overstating his symptoms and limitations beyond what the medical findings will support." (R. at 947). Dr. Panepinto's RFC restricted Plaintiff to "light work exertionally and to sedentary for ambulation due to functional losses of the claimant degenerative changes of the L spine and the residual of corrective surgeries to relieve his pain." (R. at 956). On reconsideration, Charles Wabner, M.D., a non-examining medical consultant, affirmed the decision. (R. at 954-956).

## V. DISCUSSION

### A. The ALJ's evaluation of Dr. Espinosa's opinion is not based on substantial evidence.

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Francisco Espinosa, his treating physician, where he opined that Plaintiff was incapacitated and unable to work. (Plt.'s Br. at 11; *see, e.g.*, R. at 701). By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clini-

cal and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). If the treating physician's opinion "is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citation omitted). "Thus, to the extent a treating physician's opinion is consistent with the relevant treatment notes and the claimant's testimony, it should form the basis for the ALJ's determination." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)) (other citation omitted).

The Court finds the ALJ's assessment of Dr. Espinosa's opinions that Plaintiff is physically incapacitated and unable to work legally insufficient and not supported by substantial evidence. The ALJ stated that Dr. Espinosa's opinions prior to De-

cember 2010 were "not entitled to either controlling or great weight" (R. at 19). Specifically, the ALJ found that:

> Dr. Espinosa's opinion applies only to the claimant's ability to perform his previous work as a concrete laborer, a physically intensive position requiring heavy lifting. Dr. Espinosa specifically noted the claimant was capable of performing light and sedentary work on multiple occasions, but found the claimant "incapacitated from work" only because he had not undergone vocational training which would allow him [to] perform sedentary and light jobs. [. . .]. Dr. Espinosa's opinion is also undercut by his February 2010 letter and progress note, in which he found the claimant should be able to return to work at the light/medium exertional level and could lift at least 15 pounds.

(R. at 19) (internal citations omitted).

First, Plaintiff argues, and the Court agrees, that the ALJ mischaracterizes the treating physician's opinions. The ALJ found credible and "assigned weight" to a December 7, 2010 letter from Dr. Espinosa whereby the ALJ believes Dr. Espinosa states claimant can perform sedentary work. (R. at 20). In fact, in this letter, the treating physician explicitly states that "[b]ecause of [claimant's] pain, it is possible that he may not even be able to perform sedentary and light duty work." (R. at 952). Dr. Espinosa continues:

> If his pain, however, is well controlled and he is capable of performing sedentary and light duty work, he should not lift more than 10 pounds. Presently, he is still under the care of Dr. Glaser at the Pain Clinic and even though he has reached maximum medical improvement by no means he has normal return of functioning. He will be permanently incapacitated to his previous occupation that required medium capacity work. His restrictions are also permanent in the sedentary and light duty level provided the pain that he may experience at any point in time would be controlled enough to allow him to be able to carry out such activities.

(R. at 952).

The ALJ also mischaracterizes Dr. Espinosa's November 9, 2010, assessment. (R. at 701). The treating physician states: "I'm hoping that [claimant] will be able to undergo vocational rehabilitation so that he can return to work in some capacity at the sedentary and light duty level. Presently he remains incapacitated and unable to work until he completes his rehabilitation." (R. at 701). In the ALJ's decision, she asserts that Dr. Espinosa found claimant incapacitated from work "only because he had not undergone vocational training which would allow him [to] perform sedentary and light jobs." (R. at 19). The ALJ is once again mischaracterizing Dr. Espinosa's assessments and finding that Plaintiff is capable of performing sedentary and light work, even though Dr. Espinosa is not offering such an opinion.

Further, in the February 19, 2010 letter and progress note that the ALJ found "undercuts" Dr. Espinosa's opinion, the treating physician noted a functional capacity evaluation could not be completed and recommended a CT scan of the lumbar spine "to make sure the fusion is solid." (R. at 892). He speculates that once tests are completed, Plaintiff should be able to work at the light to medium capacity level; however, Dr. Espinosa only speculates that the results will indicate this once more tests and a functional capacity evaluation is completed. (R. at 892). The ALJ also cites to a follow-up consultation on February 26, 2010, where Dr. Espinosa notes Plaintiff is in "intractable low back pain" and indicates the CT scan showed both fusion sites were solid, but Plaintiff's pain "is from the instrumentation irritating surrounding tissues." (R. at 453). At no point does Dr. Espinosa state that Plaintiff is

capable of unqualifiedly performing light and sedentary work, as the ALJ suggests. (R. at 19).

Second, the ALJ states that Dr. Espinosa's opinion is inconsistent with his own physical examinations, "as he did not document any muscle atrophy, neurological deficits, or strength deficits which would prevent the claimant from performing even sedentary exertional work." (R. at 19). But the ALJ disregards that Dr. Espinosa stated that Plaintiff's foraminal stenosis at L4-5 and L5-S1 on the left side could explain his neuropathic pain (R. at 285), and both Dr. Espinosa and Dr. Glaser documented Plaintiff's pain (R. at 282, 285, 339, 963), which would support the treating physician's assessment that Plaintiff is unable to work. Although the ALJ is not required to mention every piece of evidence in the record, *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004), his failure here to evaluate any of the evidence that potentially supported Plaintiff's claim "does not provide much assurance that he adequately considered [Plaintiff's] case." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

Third, the ALJ states that Dr. Espinosa's opinion is inconsistent with the state agency medical consultant's opinion, whom she affords considerable weight. (R. at 19-20). The ALJ's reliance on the State agency consultant is legally insufficient. The ALJ gave considerable weight to the opinion of the State agency medical consultant because "he examined all the available evidence, assessed the credibility of the claimant's statements, and reach a conclusion consistent with the overall evidence of record." (R. at 20). But the opinion of a non-examining physician is insuffi-

cient, by itself, to reject an examining physician's opinion. *Beardsley*, 758 F.3d at 839. The ALJ provides no "good reasons" for discounting the treating physician's opinion, other than misstatements from Plaintiff's treating physician, an insufficient conclusion that Dr. Espinosa's opinions are inconsistent with his own physical examinations, and an improper reliance on a non-examining physician's opinion. (R. at 19-20).

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the weight to be afforded the treating physician's opinions. If the ALJ finds "good reasons" for not giving the opinion controlling weight, *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), in determining what weight to give the opinions. *See also Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion.").

## B. Substantial evidence does not support the ALJ's credibility determination.

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony about the nature and extent of his pain. (Plt.'s Br. at 14). An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support a claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the

case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

The ALJ discounted Plaintiff's reports of disabling symptoms on the basis that the "claimant's allegations are unsupported and even contradicted by the medical evidence of record." (R. at 17). The ALJ continues that, "[i]n spite of [the] considerable medical treatment, the objective evidence does not corroborate the claimant's testimony and allegations of extreme pain and physical limitations" (R. at 18), and she bases her reasoning on the fact that the "post-surgery objective imaging and testing evidence does not reveal findings that support the claimant's allegations of disabling pain, and extreme walking, sitting and standing limitations." (R. at 18). The ALJ's analysis is legally insufficient. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)). Lack of objective evidence to fully support allegations is not a legitimate basis for rejecting a claimant's credibility. *See* SSR 96-7p; *Adaire v. Colvin*,

2015 WL 678735, at *2, ---F.3d--- (7th Cir. Feb. 18, 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to 'objective' injuries or illnesses—the kind of injuries and illnesses revealed by x-rays."); *Hall v. Colvin*, 2015 WL 727962, at *2, ---F.3d--- (7th Cir. Feb. 20, 2015) ("an administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain but only the applicant's or some other witness's say so"). Moreover, in this case there *was* objective medical evidence of pain, which the ALJ disregarded. As already noted, Dr. Espinosa opined that the x-ray finding of mild foraminal stenosis at L4-5 and L5-S1 on the left side could explain Plaintiff's neuropathic pain. (R. at 285).

The ALJ further found that the objective evidence is inconsistent with the claimant's allegations because during follow-up consultations in 2009-2010, Dr. Espinosa found the claimant "had no muscle spasm, normal muscle strength in the lower extremities, normal posture, normal heel and toe walking, no neurological deficits, and only a slow gait, positive straight leg raising and subjective tenderness on palpation of the spine." (R. at 18). The ALJ does not explain how these findings undermine Plaintiff's allegations of pain, and in fact, during these consultations Dr. Espinosa corroborates Plaintiff's testimony of extreme pain: "Mr. Nazifi explains that his pain is aggravated by prolonged standing or walking and also by humid weather. He explains that his pain is extremely bothersome 3-4 times per week" (R.

at 814); "complaint of intractable low back pain" (R. at 824); "He was referred to the pain clinic for a trial of epidural steroid injections. He did not find any relief with that treatment" (R. at 852). Dr. Glaser, Plaintiff's pain management physician, also noted various levels of pain during consultations. *See, e.g.,* R. at 499 ("The pain is best described as always present and the intensity varies . . . [t]he pain has increased since it began.").

The ALJ relied on an incident where Dr. Espinosa noted that Plaintiff "limped in the exam room, but then walked normally upon leaving the clinic." (R. at 20). The Seventh Circuit recently considered a case with almost identical reasoning by the ALJ, where the ALJ stated: "The claimant did not present himself with such extreme limitations when he did not know he was being observed.... [A doctor] noted 'near normal function when observed after he left our office.'" *Adaire v. Colvin,* 2015 WL 678735, at *2 (7th Cir. Feb. 18, 2015). The Seventh Circuit rejected the ALJ's assumptions and emphasized that "[the ALJ] didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps." *Id.* at *2-3. The same is true here. Nowhere do the medical records provide support for the proposition nor does the ALJ explain why Plaintiff's back pain is only credible if he limps.

Additionally, the ALJ impermissibly found that Plaintiff's "activities of daily living do not support a limitation beyond the sedentary exertional level." (R. at 20). The ALJ noted that Plaintiff "can manage his personal care, albeit at a slower pace, drive a car, go shopping, manage money, watch television, attend church, spend time with family, and use the computer." (R. at 20). While it is permissible for an

ALJ to consider a claimant's daily activities when assessing credibility, the Seventh Circuit has repeatedly admonished ALJs not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). The Commissioner argues that the ALJ's reliance on daily activities merely supported the ALJ's conclusion that Plaintiff's claimed degree of limitations were inconsistent with his activities. (Resp. at 7). To the contrary, the ALJ's statement that Plaintiff's activities "support a limitation beyond the sedentary exertional level" establishes that the ALJ placed undue weight on those activities to conclude Plaintiff could function in a modern workplace at a sedentary RFC level.

Plaintiff further argues that the ALJ failed to consider the side effects of his medication. "[A]n ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562. The Commissioner argues that the ALJ recounted the reported side effects in the decision. (Resp. at 8). The extent of the ALJ's consideration of Plaintiff's side effects is where she recounts that the claimant has "further alleged resulting symptoms and limitations, including

medication side effects [. . .]" and takes "several medications for his back pain." (R. at 17-18). It is unclear from the ALJ's decision whether she considered medication side effects in assessing Plaintiff's credibility. On remand, the ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon*, 763 F.3d at 721.

**C. Summary**

Because the Court is remanding on the treating physician and credibility issues, the Court chooses not to address Plaintiff's argument that the ALJ failed to consider his depression. On remand, after determining the appropriate weight to be afforded Plaintiff's treating physician's opinions, the ALJ shall reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical and mental impairments, including his alleged depression, and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Nazifi's request to reverse the ALJ's decision and remand for additional proceedings is **GRANTED**. Defendant's Motion for Summary Judgment [24] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: February 26, 2015

*Mary M Rowland*